IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BRANDON SINDELIR, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:22-CV-1567-D |
| § | |
| KEVIN VERNON, JR. and § | |
| JOHN DELEON, § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Brandon Sindelir ("Sindelir"), a female, alleges that defendant Kevin Vernon, Jr. ("Vernon"), a former police officer of the City of Ferris, Texas, is liable under 42 U.S.C. § 1983 for violating her Fourth Amendment rights by using excessive force against her and illegally detaining her. Sindelir also asserts that defendant John Deleon ("Chief Deleon"), the Ferris Police Department ("Ferris PD") Chief of Police, is individually liable under § 1983 for improperly hiring Vernon, and that Chief Deleon, in his official capacity (i.e., the City of Ferris), is liable under § 1983 based on municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Chief Deleon moves to dismiss under Fed. R. Civ. P. 12(b)(6), contending that Sindelir has failed to state a claim on which relief can be granted and that he is entitled to qualified immunity. Chief Deleon also maintains that Sindelir cannot recover punitive damages against him in his individual capacity. For the reasons explained, the court grants Chief Deleon's motion and also grants Sindelir leave to replead.

I

On July 19, 2020 Sindelir and her friend, Tiffany Rios ("Rios"), were at Sindelir's residence after visiting a water park.[1]  Sindelir was still wearing her bathing suit, and Rios was clad in a sports bra and shorts.  At some point, Rios exited the residence to retrieve Sindelir's dog.

Vernon, who was seated in his patrol car in Sindelir's neighborhood, approached Rios. After demanding that she return inside the house because of her indecent attire, Vernon initially arrested her for indecent exposure but then issued a citation instead.  Sindelir's daughter witnessed the encounter between Vernon and Rios and informed Sindelir.  Sindelir then approached Vernon to ask why Rios was being detained and whether she could give Rios a towel.  In response, Vernon instructed Sindelir to step back because she was "interfering," an assertion that Sindelir disputed.

As Sindelir began to use her phone to record her conversation with Vernon, he approached her, ripped the phone from her hand, and slammed her onto the gravel driveway. As she lay defenseless, Vernon twisted her arm as he began to handcuff her.  Although Sindelir protested that she was not interfering with the investigation, Vernon detained her in his patrol vehicle.

Vernon spoke by phone with Sergeant Peter Santi ("Sgt. Santi"), and was instructed

---

[1] In deciding Chief Deleon's Rule 12(b)(6) motion, the court construes the first amended complaint in the light most favorable to Sindelir, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Sindelir's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)

to release Sindelir and Rios. During the call, another officer, who had responded to Vernon's call for assistance, informed Sgt. Santi that he did not feel Vernon's actions were justified. Rios and Sindelir were both released without being formally charged or issued a ticket.

According to Sindelir's first amended complaint ("amended complaint"), Vernon lacked reasonable suspicion to detain her for the offense of interfering with public duties, and, as a result of Vernon's use of force, she suffered bruises, swelling on her body, and a rash on her shoulder, for which she was treated the following day at the hospital. Vernon was terminated from the Ferris PD three days after the encounter (on July 22, 2020), following an internal affairs investigation.

Before Vernon was hired by the Ferris PD, he was employed with the Wilmer, Texas Police Department ("Wilmer PD"), where he had a history of using flagrant excessive force and fabricating facts to justify detaining women during traffic stops. On December 3, 2019 he was terminated from the Wilmer PD for using excessive force on November 12, 2019 against a female. Vernon repeatedly indicated on his Ferris PD employment application that he had been terminated by the Wilmer PD for the use of excessive force. He is alleged to have used excessive force against female detainees on two other occasions as a Wilmer PD police officer.

According to the amended complaint, Chief Deleon consciously failed to adequately screen Vernon before hiring him; despite an awareness of his prior use of excessive force, an investigation was conducted into all of Vernon's prior places of employment except the Wilmer PD.

Chief Deleon seeks dismissal of all claims against him in his individual and official capacities. Sindelir opposes the motion, which the court is deciding on the briefs.

II

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of the plaintiff's amended complaint "by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (alterations adopted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive Chief Deleon's Rule 12(b)(6) motion, Sindelir's amended complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alterations adopted) (quoting Rule 8(a)(2)). Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule

8 announces does not require 'detailed factual allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U. S. at 555).

### III

The court turns first to Sindelir's claim alleged against Chief Deleon in his official capacity, i.e., his claim that the City of Ferris is liable under § 1983 based on *Monell*.[2]

### A

Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).[3]

"The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Par.*, 336

---

[2] A suit against Chief Deleon in his official capacity is "in all respects other than name" a suit against the city. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[3] Chief Deleon argues in his reply that the City of Ferris did not receive notice and an opportunity to respond before the statute of limitations expired. The court holds that this argument lacks merit because the timely-filed complaint clearly alleged that Chief Deleon was being "sued in his official capacity." Compl. ¶ 3.

F.3d 363, 369 (5th Cir. 2003)).  "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the [municipality] may be liable." *Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000).  "However, this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle*, 613 F.3d at 542 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)).

"Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986)).  "Policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the official." *Arevalo v. City of Farmers Branch*, 2017 WL 5569841, at *5 (N.D. Tex. Nov. 20, 2017) (Fitzwater, J.) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam)).  "[T]he policymaking authority of chiefs of police within their own department is not something that can be inferred from their title alone." *Id.* at *6.  Facts must be pleaded demonstrating that the relevant governing body either expressly or impliedly delegated policymaking authority to the relevant official.  *See id.* at *5 (citations omitted).

B

Sindelir's amended complaint contains only conclusory allegations that Chief Deleon in his official capacity is a final policymaker for purposes of municipal liability.  Although the amended complaint does plead facts concerning Chief Deleon's *decisionmaking* authority as Chief of the Ferris PD, this is insufficient to plausibly plead *policymaking* authority.  And

-6-

contrary to the allegations of the amended complaint, Chief Deleon's signing off on Vernon's termination paperwork—which was printed on City of Ferris letterhead—does not plausibly plead that the City of Ferris delegated policymaking authority to Chief Deleon. The document at most reflects a decision approved by Chief Deleon, not a policy that he adopted.

Because Sindelir has failed to plausibly plead that Chief Deleon is a final policymaker for the City of Ferris, her claim (count three) that Chief Deleon is liable in his official capacity (and, in turn, that the City of Ferris is liable under *Monnell*) for Vernon's alleged Fourth Amendment violations is dismissed.

IV

The court now considers Sindelir's claim against Chief Deleon in his individual capacity for improper hiring.[4] Chief Deleon contends that this claim fails on the merits and because he is entitled to qualified immunity.

A

To bring an inadequate hiring claim under § 1983, two elements must be adequately pleaded: (1) the "policy must have been adopted with 'deliberate indifference' to its known or obvious consequences;" and (2) the defendant "must be the 'moving force' behind the constitutional violation." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

---

[4]Count four of Sindelir's amended complaint is labeled an "Improper Retention, Hiring, Training" claim against Chief Deleon. Am. Compl. at 39. But the amended complaint only pleads facts that are relevant to an improper hiring claim, and in her response to Chief Deleon's motion to dismiss, Sindelir does not brief any claims for improper retention or training. The court therefore construes count four to plead only a claim for improper hiring.

"[F]ailing to respond to a history of 'bad or unwise acts' that 'demonstrate lack of judgment, crudity, and, perhaps illegalities' is not enough for deliberate indifference." *Livezey v. City of Malakoff*, 657 Fed. Appx. 274, 277-78 (5th Cir. 2016) (per curiam) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

Qualified immunity shields officials who perform discretionary functions from liability in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *Goodman v. Harris Cnty.*, 571 F.3d 388, 396 (5th Cir. 2009). "When an official pleads qualified immunity, 'the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.'" *Rivera v. Bonner*, 952 F.3d 560, 564 (5th Cir. 2017) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). At the motion to dismiss stage, all factual allegations alleged in the complaint are accepted as true and continue to be viewed in the light most favorable to the plaintiff. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

The court engages in "a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). First, the court must decide whether the plaintiff has adequately pleaded facts demonstrating a constitutional violation. *Id.* (citations omitted). Then, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citations omitted). The court has discretion to decide which prong to address first. *Id.* at 236. "A clearly

established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The relevant clearly established law must not be defined at a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 741). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

B

In *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), a sheriff failed to adequately screen the background of a deputy before hiring him, and had such screening been conducted, it would have revealed that the deputy had a record of driving infractions and other misdemeanors, including assault and battery, resisting arrest, and public drunkenness. The Supreme Court held the sheriff was not liable for the deputy's use of excessive force under a municipal liability theory because, despite this background, the deputy's use of excessive force was not the plainly obvious consequence of the sheriff's hiring decisions. *Id.* at 412-14.

Similarly, in *Arevalo v. City of Farmers Branch*, 2018 WL 1784508 (N.D. Tex. Apr. 13, 2018) (Fitzwater, J.), an improper hiring claim was brought against a police chief after an officer used deadly force against an individual. This court held that the chief did not act unreasonably under clearly established law when he hired the officer, even though the officer had a history of complaints of excessive force in prior employment. *Id.* at *9-10.

Construing Sindelir's amended complaint in the light most favorable to her, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in Sindelir's favor, the amended complaint alleges the following facts. Vernon was employed by the Wilmer PD for two years, during which he was involved in three known incidents of alleged excessive force against female detainees. His employment was terminated in response to one of the three incidents. The amended complaint does not allege that Vernon was found guilty of, or even disciplined for, using excessive force on the other two alleged

occasions, or that Chief Deleon knew of these incidents or should have known had he adequately screened Vernon's background before hiring him. According to the amended complaint, Chief Deleon did take some steps to screen Vernon's background before hiring him and received favorable reports, although he did not follow up with the Wilmer PD. Chief Deleon decided to hire Vernon despite his prior termination for the use of excessive force.

For purposes of determining Chief Deleon's entitlement of qualified immunity, "'[t]he relevant inquiry'" then, "'is whether existing precedent placed the conclusion that [Chief Deleon] acted unreasonably in these circumstances "beyond debate."'" *Id.* at *9 (quoting *Mullenix*, 577 U.S. at 13-14). Under the case law, it cannot be said "beyond debate" that Chief Deleon acted unreasonably when he hired Vernon. Chief Deleon did take steps to investigate Vernon's background before hiring him. The Ferris PD detective who investigated Vernon's background reported to Chief Deleon that Vernon "demonstrated a great attitude with other officers as well as citizens and offenders that he encountered during his service;" that he "knew when to turn up aggression and reduce aggression appropriately;" that a coworker who worked closely with Vernon "commented first on how likable he was and how hard of a worker he was;" that he "handle[d] himself well in difficult or intense situations;" and that an essay answer that Vernon provided indicated that "he is teachable which is tremendously important to consider in our selection process." Am. Compl. ¶ 170.[5]

---

[5] The court can consider these facts in deciding Chief Deleon's motion to dismiss. "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents

As in *Arevalo*, although Vernon's background involved at least one substantiated complaint of excessive force, it was not objectively unreasonable for Chief Deleon to hire Vernon. Chief Deleon is therefore entitled to qualified immunity with respect to Sindelir's improper hiring claim.

V

Sindelir also brings a claim for punitive damages against Chief Deleon in his individual capacity.[6] Because all claims against Chief Deleon in his individual capacity are being dismissed, Sindelir's claim for punitive damages against Chief Deleon in his individual capacity must be dismissed as well.

VI

The court's usual practice when granting a motion to dismiss is to permit a plaintiff at least one opportunity to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). Sindelir has not

---

attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The detective's memorandum is not only attached to the amended complaint, an image is reprinted in ¶ 170.

[6]Sindelir clarifies in her response that her punitive damages claim is only asserted against Chief Deleon in his individual capacity, not his official capacity.

stated that she cannot, or is unwilling to, cure the defects that the court has identified. And although she has already amended her complaint once, she did so on her own, not after the court identified deficiencies in her pleadings.

Accordingly, Sindelir must filed her second amended complaint within 28 days of the date this memorandum opinion and order is filed.

\* \* \*

For the reasons stated, the court grants Chief Deleon's motion to dismiss and grants Sindelir leave to file a second amended complaint 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

February 16, 2023.

                                                                _____
SIDNEY A. FITZWATER
SENIOR JUDGE